OPINION
{¶ 1} Appellant, Anthony Aquila, appeals the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of appellee, Martin LaMalfa, on Aquila's cause of action for negligence. For the following reasons, we reverse the decision of the trial court and remand the matter.
 {¶ 2} On August 17, 2003, Aquila and LaMalfa attended the LaMalfa family reunion, held at the YMCA in Perry, Ohio. Aquila and LaMalfa participated in an activity known as a "sack race" or a "potato sack race." The object of a sack race is to be the first person to *Page 2 
cross the finish line. Participants place their feet in a sack, typically a burlap or potato sack, and race by hopping. In the course of the race, LaMalfa came into contact with Aquila, causing Aquila to fall and suffer a broken hip.
 {¶ 3} On July 27, 2004, Aquila filed suit against LaMalfa, alternatively alleging that LaMalfa's contact with Aquila was negligent, reckless or intentional. LaMalfa moved for summary judgment. LaMalfa argued that there was no evidence that he had acted recklessly or intentionally. LaMalfa further argued that Aquila's negligence claim failed as a matter of law, on the theory that there is no liability for negligence for injuries suffered in the course of a recreational or sporting event.
 {¶ 4} On August 8, 2005, the trial court granted summary judgment in LaMalfa's favor with respect to Aquila's negligence and intentional tort claims. Aquila's claim that LaMalfa's conduct was reckless was tried to a jury beginning August 9, 2005. The jury returned a verdict in favor of LaMalfa. On September 6, 2005, the trial court entered judgment on the jury's verdict. This appeal timely follows.
 {¶ 5} On appeal, Aquila challenges the trial court's grant of summary judgment in LaMalfa's favor on his negligence claim only. Aquila raises the following assignment of error:
 {¶ 6} "The trial court erred in granting defendant's motion for summary judgment as to the negligence cause of action when it refused to consider the application of binding precedent to underlying facts which would have supported such a negligence claim."
 {¶ 7} Pursuant to Civ. R. 56(C), summary judgment is proper when: (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party *Page 3 
against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision.Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
 {¶ 8} The law favors a citizen's right to trial by jury except in cases where reasonable minds can come to but one conclusion. One must, if intellectually true to the Civ. R. 56 analysis, assume as true all facts in evidence on behalf of the non-moving party. Summary judgment is not a case management tool to be utilized by trial courts, but must be used sparingly. The trial court may not engage in a weighing of the evidence or a determination of whether a party may be successful at trial in meeting its ultimate legal burden. Once evidence is presented by the non-moving party as to any element of the claim, the final determination of whether a plaintiff or defendant is ultimately successful lies in the exclusive control of the finder of fact at trial.
 {¶ 9} The Supreme Court of Ohio in Marchetti v.Kalish (1990), 53 Ohio St.3d 95, syllabus, stated that: "[w]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either `reckless' or `intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." "A player who injures another player in the course of a sporting event by conduct that is a foreseeable, customary part of the sport *Page 4 
cannot be held liable for negligence because no duty is owed to protect the victim from that conduct." Thompson v.McNeill (1990), 53 Ohio St.3d 102, paragraph two of the syllabus.
 {¶ 10} In Biggin v. Stark (Aug. 26, 1994), 11th Dist. No. 93-T-4952, 1994 Ohio App. LEXIS 3747, while the parties were playing golf together, the appellant was standing on a cart path next to the tee, and the appellee was taking practice swings. Id. at 1. Appellee's golf club slipped out of his hand, flew through the air, and struck appellant in the mouth, causing injury. Id. at 1-2. This court applied a recklessness standard and stated that "since [the] appellee did not intend the initial act of losing control over the club, it is not possible for [the] appellee's activity to be defined as reckless." Id. at 5.
 {¶ 11} We must stress that a golfer assumes the ordinary risks of the game, i.e., being struck by an errant golf ball or club. See McNeill and Biggin, supra.
 {¶ 12} In the instant matter, we rely upon our holding inCoblentz v. Peters, 11th Dist. No. 2004-T-0017, 2005-Ohio-1102, at ¶ 21, as determinative. This is binding precedent in our district, which we must follow. We have established the requisite analysis, which further defines negligent verses reckless conduct during sports or recreational activities.
 {¶ 13} Pursuant to the Supreme Court's precedent inMarchetti and our precedent in Biggin andCoblentz, the trial court in this matter must first consider and determine whether or not "intentional tackling" is an actual part of the activity of sack racing; and as this is a motion for summary judgment, we must construe all evidence most strongly in favor of the non-moving party. Thus, based on Marchetti, supra, where individuals engage in recreational or sports activities, they assume the ordinary risks of the game, and courts apply a recklessness standard in order to determine liability. We applied a recklessness standard *Page 5 
in Biggins, where a golf club flew out of someone's hand hitting another in the mouth, due to the golf club being an essential part of the activity.
 {¶ 14} In Coblentz, we further refined the analysis, to include an "actual part of the game test," in which we reasoned:
 {¶ 15} "Although many golfers use motorized golf carts, a motorized golf cart, unlike a golf ball or club, is not incidental to the game of golf. As such, because a golf cart is not an actual part of the sport of golf, appellant had no reason to assume that he would be struck and injured by a golf cart since it is not an ordinary risk of the game." Id. at ¶ 21. Thus, this court indicated that if driving a golf cart is not an actual part of the activity, it cannot be an ordinary risk of the game and negligence should be the standard applied. Id.
 {¶ 16} The incident at issue in this case, like inCoblentz, does not involve conduct that is an "actual part of the game," therefore, it is not foreseeable. "Intentional tackling" is not a customary part of the sport or activity of sack racing. The activity of sack racing does not include being intentionally tackled by an errant, although well-meaning, participant, and is not foreseeable conduct. Sack racing is not a contact sport or activity. In Coblentz, we held that a negligence standard should have been applied. Id. at ¶ 21. We would find that to be the case in the instant matter as well.
 {¶ 17} Aquila was injured as the result of a collision during a sack race and asserts liability on the theory that this collision was caused by LaMalfa's negligence. The possibility of two participants colliding is a foreseeable, customary part of virtually every racing sport, cf. Pressler v. U (1990),70 Ohio App.3d 204, 206 ("[t]he collision occurred during an ordinary risk: passing or maneuvering during a race.") However, the facts of this case are different *Page 6 
from an incidental collision during a race. In this matter, we are forced under a summary judgment standard to interpret all facts in evidence in favor of the non-moving party.
 {¶ 18} It is clear from the record that this "roughhousing" between two grown men was done in a spirit of childlike competition between cousins, which unfortunately due to their respective ages and physical limitations, may negligently have caused some serious damage. Cf. Gentry v. Craycraft,101 Ohio St.3d 141, 2004-Ohio-379, at ¶ 9 ("the determinative factor in a defendant's liability in sports and recreational activity cases is the conduct of the defendant himself * * *").
 {¶ 19} This court is not attempting to impose tort liability whenever a participant in a sport or recreational activity violates the rules of that activity. There is no per se liability for cheating or if two of the participants would have tumbled into each other while racing. However, pursuant to our earlier holding inCoblentz, being blind tackled by another middle-aged adult man is not a reasonable and customary part of the activity of sack racing. This distinction is demonstrated by the facts of theMarchetti decision. In that case, the parties were engaged in a variation of the game of "kick the can." The defendant, who had been called "it," continued to run at the plaintiff who was standing on "base," in this case, a ball. Although he was supposed to stop, the defendant collided with the plaintiff and kicked the ball out from under her "in frustration," which caused her to fall.Marchetti at 101, fn. 4. The court did not find the defendant's action to be outside the foreseeable and customary part of the activity, or that such action was reckless or intentional. Id. at 100. In the case before us, the trial judge properly found enough evidence for reckless conduct but improperly excluded negligence based upon Coblentz.
 {¶ 20} The sole assignment of error is with merit. *Page 7 
 {¶ 21} For the foregoing reasons, the decision of the Lake County Court of Common Pleas, granting summary judgment in favor of LaMalfa on Aquila's negligence claim, is reversed, and the matter is remanded for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., concurs,
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.